**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **PAM BRIONES, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-08-48** |
| | § | |
| **SMITH DAIRY QUEENS, LTD., d/b/a** | § | |
| **DAIRY QUEEN** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion Compel (Dkt. No. 42), to which Defendant has responded.[1] After considering the parties' arguments and the applicable law, the Court is of the opinion that Plaintiffs' motion should be **GRANTED** in part and **DENIED** in part.

**Background**

The Court has, on two previous occasions, briefly set forth the facts giving rise to this litigation. *See* Dkt. Nos. 17 & 40. As stated in more detail in the Court's prior Orders, Plaintiffs allege that, on April 28, 2007, employees of a Dairy Queen in Hallettsville, Texas refused to serve them because of their ethnicity. Accordingly, Plaintiffs filed suit pursuant to 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq. See* Dkt. No.1.

The instant motion seeks to compel Defendant, which owns 33 Dairy Queen stores, to produce documentary records previously requested and whose due date has long since passed. On April 29, 2008, Plaintiffs served upon Defendant their First Set of Requests for Production. The responses to such request became due on May 29, 2008. *See* FED. R. CIV. P 34(b)(2). On June 11,

---

[1] Plaintiffs have also filed a Motion for Leave to File Reply to Defendant's Response to Plaintiffs' Motion to Compel (Dkt. No. 44), which the Court **GRANTS**.

2008, Plaintiffs served upon Defendant their Second Set of Requests for Production. The responses to the second set of requests became due on July 11, 2008. *See id.* Plaintiffs contend Defendant has not responded, or has responded insufficiently, to portions of the discovery requested. In contrast, Defendant claims that, to the extent it has not already produced the discovery requested, the relevant requests are either overly broad, harassing, or irrelevant. The records over which the parties are in dispute include certain employee records, sales records, safety meeting records, franchise agreements, and financial records.

## Legal Standard

As the Fifth Circuit has repeatedly instructed, " 'a district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.' " *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)). The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* FED. R. CIV. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). Materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear[] reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Knight*, 241 F.R.D. at 263 (citing *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 57 (E.D. Pa. 1979)). Once the moving party

establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 56 (E.D. Pa. 1994); *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118 (N.D. Ind. 1991); *see also* FED. R. CIV. P. 26(b)(2) (Courts may limit discovery if 1) the discovery sought is shown to be unreasonably cumulative or duplicative, or is more easily obtainable from another, more convenient source; 2) the party seeking discovery has had ample opportunity to obtain the information sought; or 3) the burden or expense of the discovery outweighs its likely benefit).

**Discussion**

**1. Employee Records**

The first item of contested discovery concerns certain of Defendant's employment records. Plaintiffs' First Request for Production Number 8 asked for the following:

> All documents contained in or relating to personnel files and/or records for each of your managers, agents and employees who were present in your restaurant in Hallettsville, Texas at any time on April 28, 2007. Include in this response all time sheets and other records relating to hours worked by these persons on April 28, 2007, and all documents relating to training received, disciplinary actions, race, hire date, positions held, promotions and demotions, performance reviews, terminations, and/or discrimination or customer complaints.

> Dkt. No. 42, Ex. 3.

Although Defendant initially objected to this request on numerous grounds, Defendant indicated it would produce the relevant records under a protective order shielding some portion of the information and materials sought. *Id.* Plaintiffs have since entered into a confidentiality agreement regarding the records at issue and Defendant claims to have produced the relevant records, redacting personal information such as addresses and social security numbers in accordance

with the agreement signed by Plaintiffs. *Id.* at Ex. 4. In Plaintiff' motion, they claimed that Defendant merely produced a roster exhibiting the names of the employees working at the time of the underlying incident. *See* Dkt. No. 42. Subsequently, however, Plaintiffs have asserted that Defendant has produced some employment records, which Plaintiffs merely described as "documents purporting to be the personnel files of the [relevant] employees." *See* Dkt. No. 44. Plaintiffs also contend that to the extent they have received the requested employment records, Defendant has only produced the records of six of the seven employees working during the time of the underlying events. *Id.*

As an initial matter, the Court agrees with Plaintiffs that in addition to the identities of the employees at issue, the ethnicities, positions, and disciplinary records of the employees working during the time of the alleged discrimination are relevant. Plaintiffs have brought forth allegations that, based on ethnicity, Defendant, through its employees, discriminated against Plaintiffs by failing to provide them service. Accordingly, it is clear that the information requested concerning the employees at issue is relevant to this dispute. Although not specifically briefed, the Court also finds that the request is neither overly broad nor unduly burdensome. To the extent Defendant omitted and/or failed to supply the information requested in Request for Production Number 8, Defendant is hereby ordered to supplement its production to comply with the request set forth above. Moreover, insofar as Defendant has not produced the employment records of the seventh employee to which Plaintiffs refer, it shall do so. Accordingly, to the extent Defendant has available to it information and/or documents regarding the relevant employees' "time sheets and other records relating to hours worked . . . training received, disciplinary actions, race, hire date, positions held, promotions and demotions, performance reviews, terminations, and/or discrimination or customer complaints,"

4

Plaintiffs' motion to compel further responses to its First Set of Requests for Production Number 8 is hereby **GRANTED**.

## 2.  Sales Records

Plaintiffs also requested records concerning the restaurant's sales on April 28, 2007. Accordingly, Plaintiffs' First Request for Production Number 22 asked for the following:

> All documents reflecting sales made by your restaurant in Hallettsville, Texas on April 28, 2007, including records that would show the times of all sales, the register or station from which the sales were made, and the personnel involved in the making of such sales.

> Dkt. No. 42, Ex. 3.

In its initial response, Defendant does not appear to have produced anything, but instead "reserve[d] the right" pursuant to FED. R. CIV. P 26(e) to supplement its response as necessary once the litigation progressed and further information became available. *Id.* Subsequently, Plaintiffs served upon Defendant their Second Request for Production Number 2, asking for the "[t]he document known as the 'detail tape' or the 'detail report' for the Hallettsville Dairy Queen for the date of April 28, 2007." Dkt. No. 42, Ex. 6. According to the deposition of Donald Strawbridge, Defendant's Corporate Representative, the detail tape would reveal every sales transaction Defendant entered into on the day in question. *See* Dkt. No. 42, Ex. 5 at pp.37-40. Mr. Strawbridge's deposition also indicates that the detail tape "should be [at corporate headquarters]." *Id.* As with its earlier response, in Defendant's second response to Plaintiffs' request, Defendant does not appear to have produced anything, but rather placed Plaintiffs on notice that it would supplement its response in due course.

At some point, in response to Plaintiffs requests, Defendant produced what the Court understands to be a batch report merely summarizing the restaurant's total sales on April 28, 2007.

Dkt. No. 42, Ex. 7. The production delivered by Defendant fails to indicate each individual sale or the times at which they were made on the day in question. Plaintiffs contend that the record of individual sales are relevant to this case in that it will go toward establishing how busy the restaurant was and whether Defendant's service sped up, slowed down, or did not change at all before, during, and immediately after Plaintiffs' time at the establishment. Such information is clearly relevant. Plaintiffs claim that service was denied to them, and shortly after they left, service continued to a group of individuals who did not share their ethnicity. The volume of sales and timing at which it varied is obviously of at least some import in establishing or defeating Plaintiffs' case.

In response, Defendant contends that such evidence in simply unavailable as it does not exist. Defendant has provided an affidavit by Mr. Strawbridge stating that "the Hallettsville Dairy Queen does not maintain minute by minute totals of what was sold on a particular day. We only keep a tally of what is sold everyday. . . . We do not have any tapes from the day in question." Dkt. No 43 at 12. Although Mr. Strawbridge's statement is seemingly at odds with those made during his deposition, based on the filings on record, the Court simply cannot determine whether the detail tape or any other evidence indicating the store's precise sales and the time at which they were made exists. To the extent such evidence does not exist and is thus unavailable, Defendant obviously cannot produce it. However, if such evidence is in Defendant's possession—be it whether this evidence is stored in Hallettsville or some other, non-Hallettsville-based or corporate facility—it must be produced. Like the records discussed above, the Court does not find this request overly broad or unduly burdensome.

Accordingly, to the extent Defendant has available to it information and/or documents "reflecting sales made by [the] restaurant . . . including records that would show the times of all

sales, the register or station from which the sales were made, and the personnel involved in the making of such sales," including the detail tape,  Plaintiffs' motion to compel further responses to its First Request for Production Number 22 and Second Request for Production Number 2 is **GRANTED**. To the extent such records do not exist, Plaintiffs' motion is **DENIED** as moot.

**3. Safety Meeting Records**

Plaintiffs further sought certain safety meeting records during which Dairy Queen's discrimination policy was discussed. Plaintiffs' Second Request for Production Number 12 requested  "[c]opies of any and all safety meeting packets, sign in sheets, and any handouts distributed at safety meetings for the Hallettsville Dairy Queen for the period of time between April 2005 and April 2007. Ex. 6. In similar fashion to the responses detailed above, Defendant initially responded that it would supplement its response if possible. *Id.*

Defendant eventually supplemented its response as well as lodged an untimely objection based on relevance, vagueness, and the overly broad nature of the request. As an initial matter, the Court agrees with Plaintiffs that the evidence requested is relevant. Plaintiffs have produced the deposition testimony of Defendant's assistant manager in which he stated that the restaurant's discrimination policy was discussed at nearly every one of the regularly-held safety meetings. *See* Dkt. No. 42, Ex. 8 at pp.49-51, 56-60. The Court, moreover, disagrees with Defendant's contention that the request is vague or overly broad.

In response to Plaintiffs' motion to compel, Defendant only addresses the existence, or lack thereof, of safety meeting minutes. Defendant claims, and has included competent evidence supporting its contention, that the sole copy of safety meeting minutes in its possession is that of one safety meeting occurring in early 2006. *See* Dkt. No 43 at 12. Like the request concerning the detail

7

tape, to the extent a document or record requested does not exist, the Court cannot compel its production. However, absent from Defendant's response is any reference to the "packets, sign in sheets, and any handouts distributed at safety meetings." Although it stands to reason that if Defendant has no safety meeting minutes it may not have any of the items requested by Plaintiffs and referenced above, the Court is in no position to make such an assumption. Moreover, Mr. Strawbridge has testified that such records are stored at both the local store and a separate corporate facility. *See* Dkt. No. 42, Ex 8, p. 60; Dkt. No. 44, Ex. 11, pp. 49-51. As stated above, if any of the relevant evidence requested is housed at the Hallettsville store or any other corporate facility— including a Dairy Queen corporate office or one of Defendant's other stores—it is in Defendant's possession and must be produced. Accordingly, to the extent Defendant has in its possession safety meeting minutes or any other evidence of "packets, sign in sheets, and any handouts distributed at safety meeting" from the specified time period, they must be produced and Plaintiffs' motion to compel is **GRANTED**. To the extent such records do not exist or have already been produced, Plaintiffs' motion is **DENIED** as moot.

**4. Franchise Agreements and Financial Records**

Plaintiffs have also requested Defendant's franchise agreement and a variety of financial records they claim to be relevant in that they would allow Plaintiffs to evaluate Defendant's overall financial condition.  In relevant part, in their First Request for Production Number 20, Plaintiffs' requested:

> Copies of your corporate records five years prior to the incident that is the subject of this lawsuit to the present, consisting of or relating to the following:
>
> (a) *annual reports and/or financial statements*,
>
> ...

(j) *franchise agreement between you and your franchisor.*

Dkt. No. 42, Ex. 3 (emphasis added).

Defendant initially objected to these requests as irrelevant, vague, and overly broad. *Id.* Defendant later asserted that at least some of the items requested were already provided in response to Plaintiffs' First Request for Production Number 10. Dkt. No. 42, Ex. 9. Although Defendant claims to have produced the franchise agreement and documents revealing the net worth of the Dairy Queen in Hallettsville, it has not provided the Court with any evidence of such production. Moreover, the Court agrees with Plaintiffs that the franchise agreement, which may contain language indicating the franchisor's requirements concerning discrimination policies and/or handling of discrimination complaints, is relevant. Accordingly, if the franchise agreement has not yet been produced, Defendant shall so produce it.

Defendant argues at some length that the requested discovery as to item (a) (the annual reports and/or financial statements) as they relate to Defendant's other Dairy Queen stores should not be allowed.  Although Defendant owns 33 Dairy Queen stores, the claims here are constrained to events occurring at the Dairy Queen in Hallettsville. Defendant contends that the discovery of the financial condition enveloping all of its stores should thus be barred as irrelevant. However, as one district court within the Fifth Circuit has recently observed, "[c]ourts have consistently found that evidence of a defendant's financial worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim" *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc*., 218 F.R.D. 125, 138  (E.D. Tex. 2003) (citing cases); *Carrasco v. Campagna*, Civ. A. C-03-4727 SBA, 2007 WL 81909, at *1 (N.D. Cal. 2007) (finding information revealing the financial condition of a defendant "probative of the amount of punitive damages that should be awarded") (citing *City of*

*Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981)). Indeed, "[w]hen a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages." *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990) (collecting cases). Discovery of the relevant financial information, however, is reasonably limited to Defendant's annual reports and/or financial statements for 2007 and 2008.

Insofar as Defendant appears to express concern over the potentially sensitive nature of these financial documents, *see* Dkt. No. 43 at 9 (requesting in the alternative that the information subject to dispute be produced in camera), the Defendant shall produce such discovery pursuant to a protective order agreed to by the parties aimed at limiting the use of Defendant's financial documents and/or information to matters associated with the prosecution of this case. Accordingly, to the extent the discovery requested is in Defendant's possession and has not otherwise previously been produced, Plaintiff's motion to compel is **GRANTED** subject to the limitations set forth above.

### Conclusion

Based on the foregoing, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

It is so **ORDERED**.

**SIGNED** on this 16th day of October, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE